# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH SANTARSIERO,** | : | No. 3:04cv1664 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **JOANNE BARNHART,** | : | |
| *Commissioner of Social Security*, | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the Court for disposition is Magistrate Judge Malachy E. Mannion's Report and Recommendation. The Report and Recommendation proposes that we grant Plaintiff's appeal of Commissioner Joanne B. Barnhart's ("Commissioner") decision to deny Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. It proposes we grant benefits for the closed period of September 17, 1987 to December 31, 1988. Plaintiff objects to the closed time period.

**I.   Background**

Plaintiff alleges that he became disabled on September 17, 1987 because of injuries sustained in an altercation at work on August 8, 1987. (Tr. 263). Dr. Joseph G. Cesare, M.D. examined him on September 24, 1987. (Tr. 263-64). Plaintiff complained that he was experiencing "intermittent low back pain or lumbrosacral spine symptoms, that he initially did relate to his left leg, however is complaining of pain, stiffness, at times intermittent referred pain to his left leg and transient paresthesias." (Tr. 263). Plaintiff explained that his pain increased when he stood up after sitting for prolonged periods. (Tr. 263). In addition, he

complained that any contact aggravated his pain. (Tr. 263). He denied that his injury caused any significant change in his bladder or bowel pattern. (Tr. 263).

Dr. Cesare's examination revealed "tenderness over the lubosacral spine, with paraspinous spasm and pain elicited with flexion beyond 60 degrees. Straight leg raise is positive in a lying and sitting position on the left side at 60 degrees, right side at 70 degrees." (Tr. 263). He did not detect "any definite focal motor deficit" and found no significant change with respect to quad strength. (Tr. 263). Thus, he diagnosed Plaintiff as suffering from: (1) a contusion, soft tissue trauma, left thigh; (2) lubosacral spine syndrome, intermittent radiculopathies, lower extremities; and (2) status post fracture (healed), left femur. (Tr. 263-64). He recommend that Plaintiff undergo an MRI, physical therapy, and continue working his light duty job casing mail. (Tr. 264).

Plaintiff underwent the MRI on October 3, 1987. (Tr. 262). The MRI revealed narrowing and degenerative change in the L4-L5 intervertebral disc. (Tr. 262). Additionally, "there is a posterior protrusion of the L4-L5 intervertebral disc of mild to moderate degree (Grade 3 to 4 of 5)." (Tr. 262). Following a reevaluation on October 15, 1987, Dr. Cesare concluded that Plaintiff could no longer continue his light duty job and ordered a leave of absence. (Tr. 261).

On January 27, 1988, Dr. Robert Sarnowski, a neurosurgeon, examined Plaintiff. (Tr. 221). He noted that Plaintiff complained of lower back pain with paresthesias. (Tr. 221). Plaintiff explained that he could not sit for any length of time, nor could he walk more than 50-175 feet at a time. (Tr. 221). Plaintiff also related that he urinated frequently and sometimes

felt as though he had not completely emptied his bladder even upon finishing. (Tr. 221). He also complained that "he feels as if he has to have a bowel movement and passes no stool." (Tr. 221). Dr. Sarnowski's examination revealed "some decreased sensation in an L5 distribution in the right leg. Straight leg raising sign was positive bilaterally. There appeared to be some weakness of the dorsiflexoers of the right ankle. He definitely has some paravertebral muscle spasm with flattening of the lumbar lordosis and tenderness to percussion over the lumbar spine." (Tr. 222). Thus, Dr. Sarnowski suggested further tests and a follow up to determine whether surgery would benefit Plaintiff." (Tr. 222).

On February 15, 1988, Dr. Cesare reevaluated Plaintiff. (Tr. 256). He explained that Plaintiff exhibited decreased lumbar mobility with straight leg raising positive bilaterally at forty five degrees. (Tr. 256). He could not, however, discern any internal neurologic deficit. (Tr. 256). Thus, he continued a conservative treatment plan with Plaintiff on a restricted home program. (Tr. 256).

On March 30, 1988, Dr. Cesare again evaluated Plaintiff. (Tr. 254). This time, he found "no definite neurological deficit regarding the L-5 dermatome, however, there is decreased sensation along the L-5 dermatome, left foot." (Tr. 254). He also explained that Plaintiff was suffering from a herniated disc with an "element of relative stenosis." (Tr. 254).

In June 1988, Plaintiff visited Dr. William A. Black, Jr. (Tr. 223). Dr. Black opined that Plaintiff had a loss of lumbar lordotic curvature with straightening and muscle spasm. (Tr. 223). He had positive straight leg raising at sixty to seventy degrees and depressed Achilles reflexes. (Tr. 223). Dr. Black diagnosed him with bilateral radiculopathy. (Tr. 223-24). He

also explained, "It is my considered medical opinion that this patient is not employable until the issues addressed above are appropriately addressed."  (Tr. 225).

On December 13, 1988, Dr. Cesare explained that Plaintiff suffered from Lumbar discogenic disease with radiculopathy in the lower extremities.  (Tr. 251).  He also stated "I presently do not feel he is capable of working."  (Tr. 251).

On September 17, 2002, Dr. Dilip S. Kar, M.D. completed a Residual Functional Capacity Assessment form.  (Tr. 265-75).  It reports that as of December 31, 1988, Plaintiff was capable of frequently lifting up to ten pounds, and occasionally could lift twenty pounds.  (Tr. 266).  It provides that Plaintiff could stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight hour workday, and had unlimited ability to push or pull.  (Tr. 266).  Dr. Kar explained that, "[t]he claimant's statements about his limitations are partially credible.  The claimant has exaggerated all his symptoms and expressed significant limitations."  (Tr. 275).  He further opined:

> There are multiple lines by different physicians, including Dr. Cesare, on September 24, 1987, January 7, 1988, November 2, 1987.  All these statements say that the claimant cannot work.  This is an issue reserved to the commissioner.  The September 30, 1987 note, however, says that the claimant can continue light duty work.  Again, this is an issue reserved to the commissioner.  Another physician, J.G.C., on March 14, 1989 alleges that in light of his overall clinical picture, the physician feels that he is not able [sic] for any employment.   This is also an issue reserved to the commissioner.  However, consideration was given to this opinion.

(T.R. 275).

Dr. John G. Cipriano, who began treating Plaintiff in December 1990, completed a Residual Functional Capacity Assessment form on October 6, 2003.  (Tr. 574-580).  He

4

opined that Plaintiff could frequently lift less than ten pounds, could stand or walk less than two hours in an eight hour day, he must periodically alternate between sitting and standing to relieve pain, and he could not push, pull, climb, balance, kneel, crouch, or crawl. (Tr. 575-76). He further explained that Plaintiff was limited in his reaching ability, gross manipulation, fine manipulation, and ability to feel. (Tr. 577).

During the hearing for disability benefits, Plaintiff testified that he experienced severe pain between his injury and December 31, 1988 when his disability insurance expired. (Tr. 46). He verified that Dr. Cesare ordered that he cease working. (Tr. 46). He explained that he could not sleep, and was unable to engage in any activity. (Tr. 46-50). He was even unable to bathe himself without assistance. (Tr. 50).

**II.     Disability Definition**

"Disability" is defined in the Social Security Act in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace. In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). The Act further provides that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him,

5

or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 459-60 (1983).

In the analysis of disability claims, the Commissioner employs a five-step sequential evaluation. 20 C.F.R. § 416.920. The initial three steps are as follows: 1) whether the applicant is engaged in substantial gainful activity; 2) whether the applicant has a severe impairment; 3) whether the applicant's impairment meets or equals an impairment listed by the Secretary of Health and Human Services as creating a presumption of disability. If the claimant cannot establish step three, he must demonstrate: 4) that the impairment prevents the applicant from doing past relevant work. See 20 C.F.R. §§ 404.1520, 416.920. If the applicant establishes steps one through four, then the burden is on the Commissioner to demonstrate the fifth step; that there are jobs in the national economy that the claimant can perform. Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

### III. Procedural Background

Plaintiff applied for DIB on October 1, 2001, alleging disability as of September 17, 1987 due to herniated discs, fibromyalgia, nerve damage, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, breathing difficulties, anxiety, stress, depression, and an eye condition. (Tr. 105, 670-72). On November 26, 2003, an ALJ held a hearing to determine whether Plaintiff qualified for benefits. (TR. 31-60). On December 10, 2003, the ALJ decided that prior to December 31, 1988, Plaintiff was capable of sustaining sedentary employment. (Tr. 13-21). Therefore, he concluded that Plaintiff was not disabled under the Act. (Tr. 13-21).

### A.     ALJ Determination

Plaintiff's insured status expired on December 31, 1988. Thus, to recover benefits, Plaintiff must establish that he was disabled prior to this date. See 20 C.F.R. § 404.131(a) (2001) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

The ALJ concluded that Plaintiff failed to do so. In the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity from the onset of his condition until his insured status expired. He did note that Plaintiff engaged in substantial gainful activity in 1999 for at least six months. Turning to step two, the ALJ found that Plaintiff's herniated disk at L4-L5 and degenerative disc disease were severe impairments within the meaning of the Regulations. In step three, however, he did found that these conditions did not meet or equal the listed impairments. In step four, he found that Plaintiff did not retain the residual functional capacity to perform his past relevant work, but could perform sedentary work. In step five, he determined that there are sufficient jobs in the national economy that the Plaintiff could perform.

In steps four and five, the ALJ analyzed the medical evidence in the record and found that Plaintiff exaggerated the extent of his pain and limitations. In reaching his conclusion, he evaluated the opinions, diagnoses, and examinations of Dr. Cesare, Dr. Sarnowski, Dr. Black, Dr. Cipriano, and the State Agency Physician. Although he recognized that each of these doctor's performed objective tests that demonstrated an objective basis for Plaintiff's pain, such as the straight leg testing, the ALJ disregarded Plaintiff's complaints for a number of

7

reasons. First, he noted that Plaintiff had intermittent symptoms with no bladder or bowel changes. In September 1987, Dr. Cesare allowed him to return to light duty work. Also, Dr. Cesare could not find focal neurological deficits, although he did find a limitation in range of motion and sensory loss in the LF dermatone. The ALJ concluded that his limitation in the range of motion was mild, and his treatment program was conservative. The ALJ found it significant that Dr. Cesare recommended Tylenol #3 for pain and Parafon Forte for spasms.

He also rejected Dr. Cesare's and Dr. Black's conclusions that Plaintiff was unable to work. He reasoned that the disability determination is reserved to the commissioner. He also decided that their opinions were solely for the purpose of determining Plaintiff's eligibility for worker's compensation claims.

Furthermore, he found that Plaintiff's treatment and activities following the expiration of his disability insurance cast suspicion on his claims that he was disabled during the covered period. He notes that Plaintiff received no treatment from 1990 to 1995, and did not regularly see a doctor until 1999. He did not complain of chronic pain again until March 2000. Furthermore, following the expiration of his disability benefits, Plaintiff lifted weights and ran on the treadmill at the YMCA seven days a week. The ALJ also found it questionable that Plaintiff would wait fifteen years to file for benefits if he was disabled.

The ALJ rejected Dr. Cipriano's statement because there was no evidence that he treated Plaintiff prior to or near the expiration of his insured status. However, he accepted the State Agency opinion that Plaintiff was capable of performing a range of sedentary work. Thus, he concluded Plaintiff had the residual functional capacity to perform sedentary work

throughout his insured period, and thus he is ineligible for benefits.

### B. The Magistrate's Finding

Following a through review of the ALJ's decision and the record on the whole, the Magistrate determined that the ALJ's conclusion was not supported by substantial evidence. First, the Magistrate found that the ALJ erred in step three by concluding Plaintiff's condition did not meet or equal Listing 1.04.[1] He noted that the ALJ's entire analysis consisted of two sentences, and the ALJ simply concluded "there is no evidence of nerve root compression or motor loss or weakness." (Tr. 15). The Magistrate found this insufficient because an ALJ must do more than merely state his conclusion at step three, and must set forth his analysis. Furthermore, the Magistrate observed that the record contained evidence that Plaintiff suffered from limited motion of his spine, and had positive straight leg raising tests, which the ALJ did not address.

---

[1] 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, veterbral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:
A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
C. Lumbar spinal stenosis resulting in pseudoclaudication., established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B(2)(b).

Next, the Magistrate found that the ALJ's decision to reject the opinions of Plaintiff's treating physicians was not supported by substantial evidence. These opinions must be given great weight when supported by objective medical evidence, and the ALJ rejected them without basis. Similarly, the Magistrate found that the ALJ erred discrediting Plaintiff's subjective complaints of pain. He found that the ALJ selectively reviewed the evidence, relying on the scant evidence supporting his conclusion while ignoring the volume of conflicting evidence.

Thus, based on the above errors, the Magistrate concluded that the ALJ's determination that Plaintiff was capable of performing substantial gainful activity was not supported by substantial evidence.

**IV.     Standard**

In disposing of objections to a magistrate's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions. Id.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is less than a preponderance of the evidence, but more

than a mere scintilla. Id.

**V.      Discussion**

The sole objection presently before the Court is Plaintiff's objection to the Magistrate's limitation of the recovery period.    The Magistrate proposes that we award Plaintiff benefits for the closed period from September 17, 1987 to December 31, 1988.  The Magistrate found that Plaintiff was disabled prior to the expiration of his insurance coverage, but limited recovery to the insured period.   Defendant does not oppose Plaintiff's objection. Both parties agree that if a claimant establishes a disability prior to the expiration of his insured status, the benefits do not necessarily terminate when the insurance coverage period ends.  See Matullo v. Bowen, 926 F.2d 240 (3d Cir. 1990); 20 C.F.R. § 404.1531.  While a claimant may not recover benefits if a disability arises after the expiration of his insured status, if the disability occurs during the insured status he may continue to recover benefits for that disability after his insured status expires.

Thus, Plaintiff argues that instead of awarding benefits for a closed period,  we should award benefits from September 17, 1987 to the present.  We will not award benefits for this period, but rather will remand to the ALJ to consider whether Plaintiff is entitled to benefits for the entire period from his injury to the present. The ALJ did not analyze whether Plaintiff was disabled for the entire period from September 17, 1987 to the present.  Such a finding was moot because he found that Plaintiff was not disabled during his insured period.  It is clear from the record that further analysis is warranted.  Since December 31, 1988, Plaintiff engaged in activity that suggests that any disability subsided.  For instance, he ceased regularly

11

seeing a doctor, began lifting weights and running seven days a week, and engaged in substantial gainful activity for at least six months. Therefore, rather than award benefits for a period where Plaintiff may not have been disabled, we will remand to the Commissioner for further proceedings consistent with this opinion.

In Defendant's brief in opposition, she argues that the Magistrate erred in finding the ALJ's conclusion unsupported by substantial evidence. Defendant has not, however, properly presented an objection to the Report and Recommendation.

> Any party may object to a magistrate judge's proposed findings, recommendations, or report . . .within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for all objections. The briefing requirements set forth in Local Rule 72.2 shall apply.

Local Rule 72.3

Defendant did not present written objections, nor did she specifically identify any portion of the Report and Recommendation to which she objects. She never asked for an extension of the period in which to file an objection. In fact, two weeks after the filing of the Report and Recommendation, Defendant's counsel sent a signed letter to the Court waiving the opportunity to object. Thus, we find that Defendant waived her opportunity to object, and we need not revisit the Magistrate's conclusion.

Furthermore, even had Defendant properly objected, our review of the record reveals no error in the Magistrate's conclusion. We find that the ALJ did not sufficiently explain his reasoning in step three. Additionally, in determining Plaintiff's residual functional capacity he

12

improperly rejected the opinions of the treating physicians and Plaintiff's subjective complaints. Both should be afforded great weight when supported by objective medical evidence. The objective medical evidence provides a basis for his treating physicians' conclusions that he was disabled and for his complaints of severe limitations from pain. Although the ultimate disability determination is reserved for the Comissioner, she must give proper weight to the evidence. We find that the ALJ did not give appropriate weight to either the treating physicians' opinions or Plaintiff's substantive complaints.

### A. Treating Physicians' Opinions

"A court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ rejected Dr. Cesare's opinion that Plaintiff was unable to work because he deemed this opinion to relate to a worker's compensation claim. There is no support in the record for this assumption. Dr. Cesare was Plaintiff's treating physician and it is his treatment notes, not a worker's compensation form, that state Plaintiff was incapable of light duty employment. Thus, the ALJ did not give the proper weight to the opinion of the treating physician.

### B. Subjective Complaints

Where subjective complaints are supported by medical evidence, that ALJ must afford them great weight. Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (citations omitted). "[W]here a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." Id.

(citations omitted).

Here, Plaintiff's testimony as to his pain was reasonably supported by medical evidence, and the ALJ's decision to discount it was not based on contrary medical evidence. In finding Plaintiff's complaints of pain unreliable, the ALJ observed that Dr. Cesare ordered that he return to light duty work in September 1987. The ALJ ignored the evidence that this order took place before Plaintiff submitted to an MRI, and that in October 1987, after Dr. Cesare reviewed the results of the MRI, he ordered that Plaintiff cease even light duty work. The ALJ also focused on the lack of a focal neurological deficit. Dr. Cesare, however, noted this absence, but based on various other objective tests and laboratory results, found that Plaintiff suffered from a degenerative change in the L4-L5 disc, lumbar discogenic disease, and radiculopathy in his lower extremities. Plaintiff also had parasthesias and limited motion of his spine. Based on these conditions, even without finding a focal neurological deficit, Dr. Cesare ordered Plaintiff not to return to his light duty position in October 1987. (Tr. 261). Similarly, both the ALJ and Dr. Cesare noted that Plaintiff had only a mild limitation in his range of motion and mild sensory loss, but Dr. Cesare concluded that the limitations were severe enough to prevent Plaintiff from working.

The sole evidence that Plaintiff was able to perform sedentary work is Dr. Kar's residual functional capacity analysis. (Tr. 265-75). Dr. Kar's analysis does not contradict the objective findings, or present objective evidence that Plaintiff was not disabled. Rather he rejects Dr. Cesare's opinion because the disability determination is reserved for the commissioner and Dr. Cesare ordered Plaintiff back to work in September 1987. This report

makes the same mistakes as the ALJ. Although the disability determination is reserved for the Commissioner, the Commissioner is not free to make the determination while ignoring the opinion of Plaintiff's treating physician. Also, Dr. Cesare's September 1987 order was made prior to an MRI review. (Tr. 263-64). The MRI revealed that Plaintiff's condition was severe enough to prevent him from working. (Tr. 261).

Finally, the ALJ relied on Plaintiff's activities after December 31, 1988 to discredit his complaints of severe pain before December 31, 1988. We find this irrelevant. That Plaintiff may have recovered or improved to some degree is not evidence that he was never disabled in the first place. The ALJ completely ignores evidence of Plaintiff's activities before December 31, 1988 and instead focuses on his later activities to analyze Plaintiff's pre-December 31, 1988 condition. Thus, we find the ALJ erred.

### VI.   Conclusion

We agree with the Magistrate's conclusion that ALJ erred in his analysis of Plaintiff's pre-December 31, 1988 disability. However, we also agree with Plaintiff's objection that the Magistrate erred in proposing that we award Plaintiff benefits for the closed period from September 17, 1997 to December 31, 1988. Plaintiff's injuries prior to the expiration of hs insured status may entitle him to benefits beyond December 31, 1988, and the Commissioner should consider the extent, if any, that Plaintiff is entitled to benefits for this period as well. Therefore, we will remand this case to the Commissioner to determine, consistent with this opinion, whether Plaintiff was disabled prior to the expiration of his benefits, and if so, the extent of his benefits, if any, under the Title II of the Act. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SANTARSIERO,** | : | No. 3:04cv1664 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **JOANNE BARNHART,** | : | |
| *Commissioner of Social Security*, | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 22nd day of September 2005, Plaintiff's appeal (Doc. 1) is hereby **GRANTED** in part. It is hereby **ORDERED** that the Commissioner's decision denying disability insurance benefits to Plaintiff is **REVERSED**, and the case is remanded to the Commissioner for further consideration consistent with the above opinion.

                                **BY THE COURT:**

                                **s/ James M. Munley**
                                **JUDGE JAMES M. MUNLEY**
                                **United States District Court**